SCOTT L. FROST, ESQ., CA Bar No. 258063
scott@frostlawfirm.com
ANDREW SEITZ, ESQ. CA Bar No. 273165
andrew@frostlawfirm.com
**FROST LAW FIRM, PC**
273 West 7th Street
San Pedro, CA 90731
Tel.: (866) FLF-MESO Fax: (833) FLF-MESO

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STEPHANIE SMARGISSO**, *Individually and as successor-in-interest to Decedent* **WILLIAM ANKIEL JR.**, *and* **WILLIAM ANKIEL III, MARY BEECHLER**, and **ANNAMARIE BRANDENBURGER**, *Individually*,<br><br>                      Plaintiffs,<br><br>           vs.<br><br>**AIR & LIQUID SYSTEMS CORPORATION**, et. al.,<br><br>                      Defendants. | Case No. 3:23-cv-01414-RFL<br><br>**PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION AS TO DEFENDANT REDCO CORPORATION F/K/A CRANE CO.'S AFFIRMATIVE DEFENSES**<br><br>**Date:**     August 6, 2024<br>**Time:**     10:00 a.m.<br>**Location:** San Francisco Courthouse, Courtroom 15, 18th Floor, 450 Golden Gate Ave., San Francisco, CA 94102<br><br>Action Filed:   March 24, 2023<br>Trial Date:     October 28, 2024 |

Plaintiffs STEPHANIE SMARGISSO, Individually and as successor-in-interest to Decedent WILLIAM ANKIEL JR., and WILLIAM ANKIEL III, MARY BEECHLER, and ANNAMARIE BRANDENBURGER (collectively, "Plaintiffs"), pursuant to Local Rule 56 (and 56.1 re: "[m]otions for summary judgment or summary adjudication) and Rule 56 of the Federal Rule of Civil Procedure, moves for summary adjudication as to Defendant REDCO CORPORATION F/K/A CRANE CO.'S ("Defendant" or "Redco") third, seventeenth, and forty-sixth affirmative defenses, covering:

(1)   Defendants' government contractor affirmative defense under *Boyle*;

(2)   Defendants' sophisticated user affirmative defense; and

(3)   Defendants' superseding cause affirmative defense.

I.   **INTRODUCTION AND SUMMARY OF ARGUMENT**

Mr. William Ankiel was diagnosed with malignant mesothelioma on or around April 7, 2022, and passed away only days after his diagnosis on April 11, 2022. Plaintiffs contend that Mr. Ankiel's mesothelioma was caused by exposure to asbestos from products manufactured, supplied, and/or distributed by Defendant Redco during his time in the Navy from 1974 to 1978.

Defendant claims numerous affirmative defenses: Defendant's third (3rd) affirmative defense alleges that Mr. Ankiel's injuries were as a result of intervening and supervening causes; Defendant's seventeeth (17th) affirmative defense asserts Mr. Ankiel as a sophisticated intermediary; Defendant's forty-sixth (46th) affirmative defense asserts the government contractor defense; and, finally, Defendant's 27th affirmative defense asserts Mr. Ankiel as a sophisticated user. (Ex. 1, Defendant Redco Corporation's (Formerly Known as Crane Co.) Answer to Plaintiffs' Complaint; Demand For Jury Trial.)

As to the government contractor and specifications affirmative defenses, Defendant's defense under *Boyle* fails because Defendant did not provide asbestos warnings and precautions as required by

Navy specifications, and the Navy erroneously did not consider asbestos products to pose a hazard at the time of Mr. Ankiel's exposure.

As to Defendant's sophisticated user and sophisticated intermediary defenses, this defense requires that the defendant provide warnings to an intermediary and that it is reasonable for the defendant to rely on the intermediary to protect end users. This defense fails because the Defendants did not provide warnings to the Navy or Mr. Ankiel, and moreover, under maritime law, the sophisticated user defense is not available.

As to superseding or supervening cause, this defense requires an unforeseeable harm different in kind from that which otherwise would have resulted in Mr. Ankiel's harm. This defense fails because the Navy's failure to warn was foreseeable and not unusual.

Summary adjudication should thus be granted as to Defendants' affirmative defenses that invoke the government contractor defense, the sophisticated user defense, and the superseding cause defense.

## II.   STATEMENT OF FACTS

### A. Summary of Mr. Ankiel's Exposure to Asbestos from Redco/Crane Co. Products.

Mr. William Ankiel was diagnosed with malignant mesothelioma and passed away only days after his diagnosis. Mr. Ankiel was in the Navy and served as a Boiler Technician from April 26, 1974, until his honorable discharge on April 21, 1978. (Ex. 2, Report of Captain Arnold Moore ["Moore Report"], p. 3.) In addition to serving as a Boiler Technician, Mr. Ankiel served as a Fireman Recruit, Fireman Apprentice, and Fireman. (*Id*. at p. 3.) Mr. Ankiel completed his training at the Great Lakes Naval Training center and reported aboard the USS Hollister (DD 788). (*Id*.) Mr. Ankiel served with his colleagues, Terry Orton and Mark Edwards, who testified as to the work performed by themselves and Mr. Ankiel. (*Id*. at p. 4, 5.)

While aboard the Hollister, Mr. Ankiel was exposed to asbestos from Redco (known at the time as Crane Co.) valves, packing, and gaskets and replacement parts supplied by Redco. (Ex. 2, Moore Report, p. 14, 26-27.) The Navy would order replacement parts from the manufacturer. (Ex. 3, Deposition of Captain Arnold Moore ["Moore Depo."], p. 32:6-22.) Mr. Orton testified that he and Mr. Ankiel worked on everything in the Hollister's boiler rooms, including the valves and their respective gaskets and valve packing, and that they would also remove and replace gaskets and packing on other valves. (*Id*. at p. 5, 13.) Mr. Edwards and Mr. Orton testified that they saw no warnings and were not provided any warnings by product manufacturers or contractors. (*Id*. at p. 12, 14.)

**B. Navy regulations required manufacturers to place warnings of hazards on their equipment, yet Defendants did not warn regarding the hazards of asbestos.**

Adding warning labels to machinery and equipment supplied to the Navy was easily accomplished and was not prohibited by the Navy; in fact, the Navy required its equipment manufacturers to provide warnings of the hazards associated with equipment delivered to the Navy and the Navy relied heavily upon its equipment manufacturers to identify hazards associated with their products. (Ex. 2, Moore Report p. 39.) The Navy required equipment manufacturers to include safety precautions in their equipment instruction books even before Mr. Ankiel began working on the Hollister. (*Id*. at p. 39-40.) In 1936, Bureau of Engineering, Navy Department, required manufacturers to provide safety precautions in their Instruction Books. (*Id*. at p. 39) The Military Specification MIL-B-15071 (SHIPS) dated April 1950 and the succeeding Military Specifications, MIL-B-15071A (SHIPS) dated October 1952 and MIL-T-15071B (SHIPS) dated April 1954, required safety notices for special hazards involved with products and precautions to be identified and for new pages to instruction manuals to be added for hazard warnings if hazards become known after the manual has been shipped. (*Id*.) Military Specifications MIL-M-15071C (SHIPS) issued in September 1957 required the use of emphatics in warnings, and required warnings for operating procedures or practices that would result in personnel

injury or loss of life. (*Id.* at p. 40.) These were the same requirements in MilSpecs MIL-M-15071D (SHIPS) issued in 1961. (*Id.*) Thereafter, in MilSpecs MIL-M-15071E issued in 1962, the General Specifications also required safety precautions for installation instructions during equipment unpacking, handling, and installation. (*Id.*)

Redco was aware that warnings were not prohibited—in fact, on March 6, 1983, Crane Co. issued drawing number 3150677, titled *Asbestos Cautionary Tag* that stated "CAUTION Contains Asbestos Packing or Gasket, which were placed on Crane Co. valves. (Ex. 2, Moore Report, p. 31.)

Crane Co admits in its responses to interrogatories that statements regarding asbestos on its products first appeared in the 1980s, well after Mr. Ankiel's time at the Navy. (Ex. 4, Crane Co.'s Objections and Responses to Plaintiff's LAOSD General Order Standard Interrogatories to Defendant Crane Co., p. 49:15-28.) Mr. Orton testified that he did not receive warnings from anyone associated with Crane Co, or see any warnings, and nor did he recall seeing warnings or statements on packaging that Crane Co gaskets contained asbestos components. (Ex. 2, Moore Report, p. 26.)

### III.   LEGAL ARGUMENT

#### A.   Standard Entry for Summary Judgment.

Summary judgment is only properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (Fed. R. Civ. P. 56(a).) To establish the absence of a "genuine dispute as to any material fact," the movant must "foreclose[] the possibility" that absent countervailing evidence the nonmoving party can prove its case. (*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1979).)

Where evidence is submitted in support of the motion, if it does not foreclose the possibility that the nonmoving party can prove its case, "summary judgment must be denied even if no opposing evidentiary matter is presented." (*Adickes*, 398 U.S. at 160, internal citations omitted.) In weighing the sufficiency of the movant's evidence, the inferences drawn from the facts are construed against the

movant. (*Sommer v. Hilton Hotels, Corp.*, 376 F.Supp. 297 (S.D.N.Y. 1974); *Society of the N.Y. Hosp. v. Ass'd Hosp. Service of N.Y.*, 367 F.Supp. 149 (S.D.N.Y. 1973).) Even where the evidentiary facts are undisputed, summary judgment must be denied if the inferences drawn from the facts are disputed. (*Hunt v. Cromartie*, 526 U.S. 541 (1999); *Am. Manufacturers Mutual Ins. Co. v. Am. Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272 (2d Cir. 1967).)

### B. Summary Adjudication is Appropriate as to Defendants' Government Contractor Affirmative Defense.

Defendant Redco has the burden of proving all of the elements of their affirmative defenses, including the government contractor defense. Defendant cannot make the factual showing which would be required to invoke the government contractor defense as set out in *Boyle*, the three prongs of which are: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." (*Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988); *Jackson v. Deft, Inc.*, 223 Cal.App.3d 1305, 1315 (1990).)

Defendants' attempt at invoking the government contractor defense fails because Navy specifications at the time required warnings and because of two reasons, either one of which is enough to deny Defendant's motion: (1) Defendants have not produced any evidence that the government prohibited them from warning regarding the hazards of asbestos; and (2) Defendants own evidence shows that the Navy during the relevant time period erroneously did not consider asbestos a hazard.

### 1. Defendants' government contractor affirmative defense fails the second prong of the *Boyle* test because Defendants' equipment did not conform to the Navy specification requiring them to warn of hazards of their products.

Plaintiffs' expert, Captain Moore, discusses The Bureau of Engineering, Navy Department, issuing General Specifications for Machinery requiring warnings and safety notices to be provided.

Adding warning labels to machinery and equipment supplied to the Navy was easily accomplished and was not prohibited by the Navy; in fact, the Navy required its equipment manufacturers to provide warnings of the hazards associated with equipment delivered to the Navy and the Navy relied heavily upon its equipment manufacturers to identify hazards associated with their products. (Ex. 2, Moore Report p. 39.) The Navy required equipment manufacturers to include safety precautions in their equipment instruction books even before Mr. Ankiel began working on the Hollister. (*Id*. at p. 39-40.) In 1936, Bureau of Engineering, Navy Department, required manufacturers to provide safety precautions in their Instruction Books. (*Id*. at p. 39) The Military Specification MIL-B-15071 (SHIPS) dated April 1950 and the succeeding Military Specifications, MIL-B-15071A (SHIPS) dated October 1952 and MIL-T-15071B (SHIPS) dated April 1954, required safety notices for special hazards involved with products and precautions to be identified and for new pages to instruction manuals to be added for hazard warnings if hazards become known after the manual has been shipped. (*Id*.) Military Specifications MIL-M-15071C (SHIPS) issued in September 1957 required the use of emphatics in warnings, and required warnings for operating procedures or practices that would result in personnel injury or loss of life. (*Id*. at p. 40.) These were the same requirements in MilSpecs MIL-M-15071D (SHIPS) issued in 1961. (*Id*.) Thereafter, in MilSpecs MIL-M-15071E issued in 1962, the General Specifications also required safety precautions for installation instructions during equipment unpacking, handling, and installation. (*Id*.)

Moreover, adding warnings was not prohibited, as discussed, *supra*, Section II.B.— Redco was aware that warnings were not prohibited—in fact, on March 6, 1983, Crane Co. issued drawing number 3150677, titled *Asbestos Cautionary Tag* that stated "CAUTION Contains Asbestos Packing or Gasket, which were placed on Crane Co. valves. (Ex. 2, Moore Report, p. 31.)  Crane Co admits in its responses to interrogatories that statements regarding asbestos on its products first appeared in the 1980s, well after Mr. Ankiel's time at the Navy. (Ex. 4, Crane Co.'s Objections and Responses to Plaintiff's LAOSD

General Order Standard Interrogatories to Defendant Crane Co., p. 49:15-28.)  Mr. Orton testified that he did not receive warnings from anyone associated with Crane Co, or see any warnings, and nor did he recall seeing warnings or statements on packaging that Crane Co gaskets contained asbestos components. (Ex. 2, Moore Report, p. 26.)

The former asbestos MDL in the Eastern District of Pennsylvania determined that asbestos defendants similar to those herein were not entitled to summary judgment based on the government contractor defense in part because there was no evidence that the Navy ever prohibited manufacturers from placing warnings on products and there was conflicting expert evidence regarding whether the defendants could warn. (*Willis v. BW IP Int'l Inc.*, 811 F. Supp. 2d 1146, 1155-57 (E.D. Pa. 2011).) In *Duenas v. Gen. Elec. Co.*, MDL No. 875, No. 12-60040, 2014 WL 345232 (E.D. Pa. 2014), in the former asbestos MDL, Judge Robreno stated that MIL-M-15071D "can be construed to indicate that the Navy not only permitted but expressly required warnings." (*Id*. at Section II(C).)

### 2. Defendant's government contractor defense fails the third prong of the Boyle test because the Navy did not consider asbestos to be a hazard during the relevant time period.

Defendant's government contractor defense fails on the third prong because at the time of Mr. Ankiel's exposure and when Defendant supplied their equipment and parts to the Navy, the Navy did not consider asbestos to be a hazard. Plaintiff's expert Mr. Moore testified that the Navy did not consider asbestos as a hazard and only started changing their minds throughout the 1970's. (Ex. 3, Moore Depo., p. 47:10-21.) In fact, the Navy did not start seeking alternatives to asbestos gaskets and packing until around 1978 and this process continued to the mid-1980's. (Ex. 2, Moore Rpt, p. 43.)

As such, for the reasons set above, summary adjudication should be granted as to Defendant Redco's 46th affirmative defense, the government contractor defense.

### C. Summary Adjudication is Appropriate as to Defendants' Superseding Cause Affirmative Defenses.

"The doctrine of superseding cause is…applied where the defendant's negligence in fact substantially contributed to the plaintiff's injury, but the injury was actually brought about by a later cause of independent origin that was not foreseeable." (*Exxon Company, U.S. A. v. Sofec, Inc.*, 517 U.S. 830, 837 (1996), quoting 1 T. Schoenbaum, Admiralty and Maritime Law § 5-3, pp. 165-166 (2d ed. 1994) [applying maritime law].) Such intervening negligence must produce a "'harm different in kind from that which would otherwise have resulted from the actor's negligence.'" (*Stolt Achievement, Ltd. v. Dredge B.E. LINDHOLM*, 447 F.3d 360, 368 n.25 (5th Cir. 2006), quoting Restatement (Second) of Torts § 442.)

Applying similar state law in an asbestos case, the Ninth Circuit determined that the Navy's failure to warn was foreseeable. (*In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 814-15 (9th Cir. 1992).) In *In re Hawaii*, the plaintiffs were shipyard workers who sued manufacturers and suppliers of asbestos-containing products, and the defendants alleged that the shipyard's negligence was a superseding cause. (*Id*. at 809, 814.) The Ninth Circuit rejected the defense, holding that, even if the shipyard knew "of the perils of asbestos exposure and nevertheless failed to implement appropriate safeguards in the workplace," the Navy's failure to warn or provide safety devices to its workers was not unforeseeable and was not so "'unusual' or 'out of the ordinary' as to warrant a superseding cause instruction." (*Id*. at 814-15 [applying Hawaii law], 814 n.3 [indicating Hawaii law on this matter tracks the Restatement of Torts].)

Because the instant case involves the same conduct by the Navy as the Navy in Hawaii, the conduct was similarly foreseeable and not different in kind from the harm that would have occurred absent the Navy's failure to warn. Summary adjudication should be granted as to Defendant Redco's 3rd affirmative defense regarding supervening cause.

### D. Summary Adjudication is Appropriate as to Defendants' Sophisticated User and Sophisticated Intermediary Affirmative Defenses.

When applicable, the "sophisticated intermediary" or "sophisticated purchaser" defense relieves a defendant of liability when the defendant conveys the necessary warning to the intermediary and the circumstances are such that it would be reasonable to rely on receipt of such warnings by the intermediary to protect end users. (*Mack v. Gen. Elec. Co.*, 896 F. Supp. 2d 333, 341 (E.D. Pa. 2012) (Robreno, J.) [asbestos MDL case].) This defense requires proof not only that a product supplier warned the pertinent intermediary, but also that it actually and reasonably relied on the intermediary to make the required warnings. (See *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 838 (2d Cir. 1992); *Willis v. Raymark Indus.*, Inc., 905 F.2d 793, 797 (4th Cir. 1990); Restatement (Second) of Torts § 388 cmt. n (1965.))

The asbestos MDL court, after an extensive look at existing jurisprudence and policy considerations specific to maritime law, determined that, under maritime law, a sophisticated intermediary defense is not available. (*Mack*, 896 F. Supp. 2d at 339-43 (Robreno, J.) [asbestos MDL case].) The court in Mack determined that it was the injured plaintiff's sophistication that was at issue, and that the Navy's sophistication was irrelevant. (*Id.* at p. 341.)

Other jurisdictions have similarly refused to apply a sophisticated intermediary defense in asbestos cases. (See *Willis*, 905 F.2d at 797 [applying Virginia law and stating that the "very dangerous" nature of asbestos and the low burden of issuing warnings weighed against application of the learned intermediary defense in asbestos cases].) Here, Defendants cannot prove (1) they warned the intermediary, whether Mr. Ankiel or the Navy; or (2) they reasonably relied on the Navy to warn Mr. Ankiel. Summary adjudication as to the sophisticated intermediary defense is thus appropriate.

As a result, Summary Adjudication should be granted as to Defendant Redco's 17th defense.

IV. **CONCLUSION**

Based on the foregoing, Defendant's 3rd, 17th, and 45th affirmative defenses regarding government contractor, superseding cause, and sophisticated user are inapplicable and/or fail as a

matter of law. Accordingly, Plaintiffs respectfully request that the Court enter an Order granting summary adjudication in Plaintiffs' favor as to these affirmative defenses.

DATED: July 2, 2024                               FROST LAW FIRM, PC

                                                  By: */s/ Andrew Seitz*
                                                       ANDREW SEITZ
                                                       Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I declare that I am over the age of 18, not a party to the above-entitled action, and am an employee of Frost Law Firm, PC whose business address is 273 West 7th Street, San Pedro, CA 90731.

On July 2, 2024, I served the following document(s) in the following manner(s):

**PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION AS TO REDCO CORPORATION F/K/A CRANE CO.'S AFFIRMATIVE DEFENSES**

on the following:

**ALL COUNSEL OF RECORD**

☒ (By CM/ECF) By transmitting electronically via CM/ECF the document(s) listed above as set forth on the electronic service list on this date before 11:59 p.m.

☐ (By E-Service). I electronically served the documents(s) via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

☐ (By E-mail) On this date, the above-referenced documents were converted to electronic files and e-mailed to the addresses shown.

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed: July 2, 2024.

/s/  *Deborah Rowe*
An Employee of Frost Law Firm, PC